```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CONTRACO LTD.,

                         Plaintiff,

      -against-                              MEMORANDUM & ORDER
                                             12-CV-1930(JS)(ARL)

FAST SEARCH & TRANSFER INTERNATIONAL,
AS and FAST SEARCH & TRANSFER, INC.,

                         Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Daniel G. Ruggiero, Esq.
                    P.O. Box 258
                    Raynham, MA 02767

For Defendants:     Franklin C. McRoberts, IV, Esq.
                    James M. Wicks, Esq.
                    Farrell Fritz, P.C.
                    1320 RXR Plaza
                    Uniondale, NY 11556
```

SEYBERT, District Judge:

Plaintiff Contraco Ltd. ("Plaintiff") commenced this action on March 19, 2012 against Defendants Fast Search and Transfer, Inc. ("Fast Inc.") and Fast Search and Transfer International, AS ("Fast AS," and collectively "Defendants") in New York State Supreme Court, Nassau County asserting several claims arising out of an alleged breach of contract between the parties. On April 19, 2012, Defendants removed the action to this Court on the basis of diversity jurisdiction. Pending before the Court is Defendants' motion to dismiss the Second Amended Complaint (the "SAC") under Federal Rule of Civil

Procedure 12(b)(6).  For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Defendants are in the business of developing, manufacturing, and selling search-related computer software. (SAC ¶ 7.)  On November 20, 2011, Plaintiff and Fast AS entered into a written contract (the "Referral Agreement"), whereby Plaintiff agreed to assist Fast AS in marketing its software to various entities, including Deutsche Telekom AG ("DTAG").  (SAC ¶¶ 6-7 & Ex. A.)  In exchange, Plaintiff would receive 27.5% of any license fees that Fast AS "actually received" as a result of Plaintiff's sales efforts during the twelve months following the sale.  (SAC Ex. A, § 5.)  The Referral Agreement provided that Plaintiff "shall receive its payment within 30 days after the receipt of such payments by FAST [AS]."  (SAC Ex. A, § 5.) Although the Referral Agreement was only signed by Plaintiff and Fast AS, Plaintiff asserts that Defendants "worked interchangeably and as one entity." (SAC ¶ 5.)

The Referral Agreement contained the following limitations period (the "Limitations Provision"):

> No action, regardless of form, arising out of the transactions under this Agreement may be brought by a party more than one year

---

[1] The following facts are taken from Plaintiff's Second Amended Complaint and the documents referenced therein and are presumed to be true for the purposes of this Memorandum and Order.

2

>     after the event which gave rise to the cause
>     of action occurred.

(SAC Ex. A § 9(ii).)  Additionally, the Referral Agreement contained a New York choice-of-law provision.  (SAC Ex. A § 17.)

With Plaintiff's assistance, Defendants sold an enterprise license to DTAG in December 2008.  (SAC ¶ 19.)  It is unclear from the face of the Second Amended Complaint if/when Defendants received payment from DTAG.[2]  Nonetheless, on February 3, 2009, Plaintiff sent Defendants an invoice for €1,100,000 "for services rendered in helping FAST AS and/or FAST [Inc.] obtain the enterprise license" with DTAG.  (SAC ¶ 20; Tymann Decl. Ex. 4.)  The invoice stated that the payment was due twenty-eight days after Defendants' receipt of the invoice.  (Tymann Ex. 4.)  Defendants, however, did not pay the invoice within twenty-eight days.

In or around June 2010, Plaintiff contacted Defendants regarding the unpaid invoice.  (SAC ¶ 29, Def. Ex. 5.)  The parties engaged in settlement discussions regarding the outstanding referral fee; however, Defendants ultimately refused to pay Plaintiff.  (SAC ¶¶ 21, 29-30.)

---

[2] Defendants submitted an affidavit attaching what appears to be a bank statement reflecting a deposit from DTAG on December 1, 2009, in the amount of €4,249,989.50.  (Tymann Supp. Decl. Ex. 23.)  However, the document is not in English, nor was it mentioned in Defendants' initial moving papers.

3

Plaintiff commenced this action in Nassau County Supreme Court on March 19, 2012, seeking damages, costs, and attorney's fees.  On April 19, 2012, Defendants removed the action to this Court.  Presently before the Court is Defendants' motion to dismiss the Second Amended Complaint.

## DISCUSSION

The Second Amended Complaint asserts six causes of action: (1) against Fast AS for breach of the Referral Agreement; (2) against Fast Inc. for an account stated; (3) against both Defendants for promissory estoppel; (4) against both Defendants for breach of an implied contract; (5) against Fast AS for quantum meruit; and (6) against Fast AS for tortious interference of contract.  All causes of action arise out of Defendants' failure to pay the invoiced referral fee.

Defendants move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court will first discuss the standard applicable to Rule 12(b)(6) motions to dismiss before addressing the merits of Defendants' motion.

I.   Standard of Review under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl.

4

Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).  First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555); accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" survive a motion to dismiss.  Id. at 679 (citing Twombly, 550 U.S. at 556).  Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.; accord Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint."  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).  This has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-52 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

5

Consideration of matters beyond those just enumerated requires the conversion of the Rule 12(b)(6) motion to dismiss into one for summary judgment under Rule 56. See FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); see also Kramer, 937 F.2d at 773.

Thus, here the Court may consider the Referral Agreement, which was attached to the Second Amended Complaint (SAC Ex. A), and the invoice, which was incorporated in the Second Amended Complaint by reference (SAC ¶ 20), without converting the motion to dismiss into a motion for summary judgment.

II. Defendants' Motion

Defendants move to dismiss Plaintiff's Second Amended Complaint because Plaintiff failed to commence this action within the limitations period set forth in the Referral Agreement. Defendants also argue that the claims against Fast Inc. must be dismissed because Fast Inc. was not a party to the Referral Agreement and, thus, cannot be bound by it. The Court will address each argument separately.

A. Lapse of the Limitations Period

"Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima

6

facie proof that the limitations period has expired since the plaintiff's claims accrued." Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995); see also Swift v. N.Y. Med. Coll., 25 A.D.3d 686, 687, 808 N.Y.S.2d 731, 732 (2d Dep't 2006). "The burden then shift[s] to the plaintiff to establish the applicability of an exception to the statute of limitations . . . ." Babu v. Consol. Edison Co. of N.Y., Inc., 72 A.D.3d 852, 853, 898 N.Y.S.2d 507, 507 (2d Dep't 2010); see also Overall, 52 F.3d at 403. Because the lapse of a limitations period is an affirmative defense that Defendants must plead and prove, the Court can only grant Defendants' motion to dismiss if it is based on facts that appear on the face of the Second Amended Complaint. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425-26 (2d Cir. 2008).

Defendants argue that the limitations period expired on March 3, 2010--one year [3] after Defendants failed to pay Plaintiff's invoice. (Defs. Mot. 13-14.) The Court disagrees. "A cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach." Guilbert v.

---

[3] Although the applicable statute of limitations for breach of contract in New York is six years, see N.Y. C.P.L.R. 213(2), parties may, by written agreement, impose a shorter period within which to commence an action so long as the agreed upon limitation is reasonable, see N.Y. C.P.L.R. 201; see also Corbett v. Firstline Sec., Inc., 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009). Here, the parties do not dispute that Limitations Provision was reasonable and thus enforceable.

Gardner, 480 F.3d 140, 149 (2d Cir. 2007); see also ABB Indus. Sys. v. Prime Tech., 120 F.3d 351, 360 (2d Cir. 1997) ("[I]n New York it is well settled that the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered."). Thus, the one-year period in the Limitations Provision here began to run on the date that the Referral Agreement was breached--i.e., when Defendants failed to pay Plaintiff its referral fee within thirty days of receiving payment from DTAG. As it is unclear from the face of the Second Amended Complaint if/when Defendants received payment from DTAG, the Court cannot determine when the cause of action accrued for the purpose of dismissing the action as time-barred under Rule 12(b)(6). However, rather than convert the motion into one for summary judgment, the Court ORDERS the parties to engage in limited and expedited discovery on the issue of timeliness, after which Defendants can file a formal motion for summary judgment on that narrow issue.

    B.   Claims Against Fast Inc.

Defendants also argue that the claims against Fast Inc. must be dismissed because Fast Inc. was not a party to the Referral Agreement. (Defs. Mot. 15.) The Court agrees. "[T]here can be no quasi-contract claim against a third-party non-signatory to a contract that covers the subject matter of the claim." Randall's Island Aquatic Leisure, L.L.C. v. City of

8

N.Y., 92 A.D.3d 463, 464, 938 N.Y.S.2d 62, 63 (1st Dep't 2012); see also Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, L.L.C., 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (holding that "a quasi-contractual claim against a third-party must be dismissed when an undisputedly valid and enforceable written contract governs the same subject matter."); Viable Mktg. Corp. v. Intermark Commc'ns, Inc., No. 09-CV-1500(JS)(WDW), 2011 WL 3841417, at *3 (E.D.N.Y. Aug. 26, 2011). As it is indisputable that the Referral Agreement governs the subject matter of the Second Amended Complaint, Plaintiff's claims against Fast Inc., which all sound in quasi-contract, must be dismissed.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and all claims against Fast Inc. are DISMISSED WITH PREJUDICE. This action is hereby REFERRED to Magistrate Judge Arlene R. Lindsay to set an expedited discovery schedule on the issue of timeliness and a deadline for commencing dispositive motion practice on that narrow issue.

The Clerk of the Court is directed to terminate Fast Inc. as a Defendant in this action.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 19, 2013
       Central Islip, NY

9